## Jay Square Deal Jewelers Inc. v. Philadelphia National Bank

*John Knox*, for plaintiff.

*John Landis*, for defendant.

HONEYMAN, J., May 20, 1960. — Plaintiff Jay Square Deal Jewelers, Inc., filed a complaint in assumpsit against defendant, Philadelphia National Bank on May 10, 1959. Defendant bank filed an answer and a motion for judgment on the pleadings, which motion is presently before the court.

On July 2, 1953 plaintiff, Jay Square Deal Jewelers, Inc., delivered a mortagage and a construction loan agreement to defendant bank. These agreements provided that the bank was to pay the contractor specified sums at various stages of construction, the last payment of $2,500 to be made on the completion of the building and the delivery of a release of liens by the contractor.

The contractor disappeared, a release of liens was never secured and the bank still held the last payment of $2,500.

Plaintiff's complaint in assumpsit alleges that the contractor had defaulted in his building contract causing damage to plaintiff in excess of $2,500. It further alleges that plaintiff was required to pay $850 to satisfy a levy made by the Internal Revenue Service against the contractor; that plaintiff is threatened with suit by an adjacent property owner for negligence of the contractor, and that the contractor failed to comply with the constuction contract in that he failed to provide a completed release of liens. In the alternative, the complaint alleges that under the mortgage and construction loan agreements the mortgage was to secure advances up to $15,000 and that only $12,500 had been advanced and as a result the $2,500 balance in the building fund must be applied as a credit on the principal of plaintiff's mortgage. In conclusion, plaintiff requests judgment against the bank in the amount of the unexpended building fund of $2,500.

As of no. 168, June term, 1954, and before the present action was commenced, Robert E. Howarth, individually and trading as North Penn Glass and Mirror Company, instituted a fraudulent debtor's attachment against the contractor and named the present defendant, the Philadelphia National Bank as garnishee. Howarth was a subcontractor and furnished material and labor for the construction of the building in question. Another of the contractor's creditors, Krupp, Meyers and Hoffman, had supplied materials for the completion of the building and had taken an assignment from the contractor of the fund in the hands of defendant bank to the extent of $2,000. Krupp, Meyers and Hoffman intervened in the fraudulent debtor's attachment instituted by Howarth.

Plaintiff sought to consolidate his complaint in assumpsit with the fraudulent debtor's attachment in which defendant bank was garnishee but the petition was denied.

A verdict in the fraudulent debtor's attachment was entered in favor of both Howarth and Krupp, Meyers and Hoffman and against defendant-bank as garnishee to the full extent of the building fund remaining.

In its motion for judgment on the pleadings, defendant bank sets forth the facts of the fraudulent debtor's attachment and that, under paragraph 6 and G of the construction loan agreement, the rights of plaintiff to the balance of the fund will be determined by the outcome of the fraudulent debtor's attachment. (The motion was filed before the verdict in the fraudulent debtor's attachment).

Paragraph 6 of the construction loan agreement provides as follows:

". . . (I)t is mutually agreed between the parties hereto that the bank shall:

"6. Pay out of the funds to contractors, sub-contractors or material men, as the Bank may elect, for work performed, services rendered, and materials furnished in and about the construction of the building. Such payments shall be made at such times and in whatever amounts the Bank may deem expedient, and shall be made according to requisitions approved by a building inspector designated by the Bank, which requisition shall be in such form and shall contain such information as the Bank may require; it being the intention of the parties hereto that the Bank shall be free to make payments heretofore mentioned in such manner that the Bank's security shall at all times be protected."

Paragraph G of this agreement provides as follows:

"It is expressly understood and agreed, any pro-

visions in this agreement to the contrary notwithstanding:

"G That the Bank shall assume no liability whatsoever to the Owner, his contractors, subcontractors and material men, or others, except for its malfeasance in the application of the said funds for the purposes hereinbefore recited and shall be fully protected in making any payment upon the faith of any requisition, inspector's certificate or release of lien or other instrument, believed by it to be genuine and to have been duly executed by the proper parties, and the Owner does hereby release and discharge the Bank of and from any such liability and hereby further agrees to indemnify and save harmless the said Bank of and from any and all liability, damages, costs and expenses which it may sustain by reason of its application of said funds in good faith for the purposes hereinbefore set forth."

Defendant bank does not deny that the contractor may have breached his contractual obligation to plaintiff but merely asserts that in the event that the verdict and judgment in the fraudulent debtor's attachment is adverse to it, paragraphs 6 and G absolve the bank of any obligation to plaintiff. Plaintiff maintains that paragraphs 6 and G do not serve to bind plaintiff to the outcome of suits by the subcontractors against the contractor and that the construction loan agreement does not authorize payment by the bank, with the knowledge that ownership in the fund is being disputed.

By paragraph 6, the bank could make payments to subcontractors at its election. By paragraph G the bank was relieved of liability for payments made ". . . upon the faith of any requisition, inspector's certificate or release of liens or other instruments . . .". The verdict in the action of fraudulent debtor's attachment

detemined the rights of the two subcontractors to the fund in the hands of defendant bank, and it was required to pay it out in its entirety pursuant to execution process issued thereafter.

In paragraph G plaintiff further agreed to ". . . indemnify and save harmless the said bank from liability, damages, costs and expenses which it may sustain by reason of its application of said funds in good faith for the purposes hereinbefore set forth." The bank made a "good faith" application of the funds to subcontractors when it satisfied its obligation as garnishee. Since all the fund has been expended, if plaintiff were allowed to recover in the present action, defendant bank would thereby be damaged, and it is from this that plaintiff has promised the bank to indemnify it and save it harmless.

It is the court's opinion that defendant bank made a distribution of the fund within the terms of the construction loan agreement and that plaintiff could not and should not recover any sum or sums against it in the present action.

*Order*

And now, May 20, 1960, for the foregoing reasons, defendant's motion for judgment on the pleadings is sustained.